UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALLIANCE SHIPPERS, INC., a New Jersey corporation,<br><br>                    Plaintiff,<br><br>   v.<br><br>ALWAYS TRANSPORT, INC., a Washington corporation,<br><br>                    Defendant. | NO: CV-09-3126-RMP<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

## INTRODUCTION

A bench trial was held in the above-captioned case on May 2 and 3, 2011. Steven W. Block and Ronald Horowitz, *pro hac vice*, appeared for the Plaintiff Alliance Transport, Inc. ("Alliance"). Richard Henry Bartheld appeared for the Defendant Always Transport, Inc. ("Always"). The Court heard testimony in open court from: Ed Wright, Doug Lawson, Scott Graham, Raymond "Larry" Fowler, and Jason Fowler. The Plaintiff submitted the depositions of Larry Fowler and

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1

Jason Fowler. All of the exhibits that were admitted in evidence have been reviewed and considered by the Court.

Having considered all of the evidence presented at the bench trial, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a).

## FINDINGS OF FACT

The Court makes the following findings of fact from the evidence and testimony presented at the bench trial:

1. Plaintiff and Counter Defendant Alliance Shippers, Inc. ("Alliance") is engaged in the business of brokering the interstate transportation of produce.
2. As part of its business, Alliance owns refrigerated trailers that are loaded by shippers with whom Alliance contracts. Alliance then brokers a truck to pick up the trailer and transport it.
3. Alliance's principal place of business is in Englewood Cliffs, New Jersey.
4. Defendant and Counter Claimant Always Transport, Inc. ("Always") is a licensed motor carrier and licensed broker that engages in the business of brokering the interstate transportation of produce.
5. Always does not own any trucks and has never provided motor carrier services.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 2

6. Always maintained a motor carrier license in order to acquire insurance as required by some of its clients.

7. Always has a website on which it is described as a "locally owned and operated Trucker – Truck Broker."

8. Always' principal place of business is Yakima, Washington.

9. On January 17, 2008, Alliance and Always entered into a "Contract for Motor Carrier Transportation." Under this contract, Always was referred to as a "Carrier," and agreed to provide carrier services for Alliance.

10. No business was performed by Always pursuant to the January 17, 2008, contract.

11. On July 30, 2008, Alliance and Always entered into a second "Contract for motor Carrier Transportation" in which Always agreed to provide carrier services for Alliance.

12. Paragraph Four of the January 17, 2008, and July 30, 2008, contracts are identical and provide in part that:

> All claims for loss and damage of property, cargo, or commodities transported under this contract, and any salvage arising therefrom, shall be processed in accordance with the regulations of the Federal Highway Administration as published as 49 CFR§1005 (sic). The Time limit for filing a claim against a CARRIER shall be nine months from the date of delivery. The time limit for instituting suit on a claim for cargo loss or damage shall be two years and one day from the date the claimant

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 3

> receives and (sic) written disallowance from the CARRIER with whom the claim was filed. If a claimant is successful in recovering for loss, damage or delay in a court of law or through arbitration, it shall be entitled to recover reasonable attorneys' fees in addition to the other costs and interest calculated from the date of delivery or scheduled delivery.

13. Paragraph seven of both contracts provides:

> Carrier shall not assign or re-broker any loads tendered to it by Alliance. If such an event occurs, Carrier agrees that it will remain primarily responsible for any loss, damage or delay. Further, Carrier agrees to reimburse Alliance for any and all costs, fees damages or fines associated with re-brokering the load.

14. On July 30, 2008, the parties entered into a co-brokerage agreement.

15. As part of its relationship with Alliance, Always would take possession of Alliance's trailers until such trailer was needed for a shipment.

16. In July of 2009, Alliance brokered a shipment of apples on behalf of Nathel and Nathel, Inc. ("Nathel") to be transported by Always.

17. During shipment the apples were damaged, and Alliance compensated Nathel in the amount of $1,403.13.

18. In September of 2009, Alliance made a claim to Always for the $1,403.13 it had paid to Nathel for the damaged apples.

19. Alliance asserted that the driver of the truck had failed to properly secure the load which caused the loss.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 4

20. Always denied liability for damaging the apples and refused to pay the claim. Alliance did not plead a claim for damage to the apples in its Complaint or as a defense in its Answer.

21. Always asserted, based on photographs, that the load had shifted forward and that the shipper was responsible for the loss.

22. By November of 2009, the relationship of the parties had deteriorated.

23. On November 26, 2009, Always took possession of trailer number ALLZ 556074 as part of the normal course of its business.

24. On December 2, 2009, Alliance cancelled orders with Always to pick up trailers from railroad loading sites.

25. Always understood Alliance's cancellation to be a termination of Always' business relationship with Alliance.

26. On December 15, 2009, Always believed that Alliance owed it $14,074.29.

27. On December 15, 2009, Alliance demanded the return of trailer number ALLZ 556074.

28. In an attempt to ensure collection of its unpaid invoices, Always refused to return the trailer to Alliance.

29. On December 31, 2009, Alliance brought this action pursuant to the Washington State replevin statute, RCW 7.64.010.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 5

30. On April 9, 2010, this Court concluded that Always was in wrongful possession of the trailer and that Alliance was entitled to immediate return of the Trailer. The Court ordered Always to immediately surrender the trailer.

31. On April 14, 2010, Always released the trailer to Alliance. Alliance incurred $55.57 in expenses related to retaking possession of the trailer.

32. Alliance presented evidence that between November 26, 2009, and April 14, 2010, that it hauled 15,824 loads using 1416 trailers. The average number of trips taken by a trailer in the Alliance fleet was 11.18 with an average net fee per load of $464.86. Alliance's loads from this area are subject to a $100.00 per trip Burlington Northern Santa Fe Railway Company ("BNSF") incentive. Alliance also receives a 4% rebate on its costs with an average cost per load of $1,328.

33. Alliance was working at capacity in the Northwest region at the time the trailer was seized and the trailer would have been put to use.

34. Always brought a counterclaim arguing that it was owed $2,505.55 based on unpaid invoices.

35. Paragraph Three of the January 17, 2008, and July 30, 2008, contracts provides that:

> Rates and charges for commodities transported under this contract shall be as agreed to between the parties in writing, shall be contained in a written or printed rate

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 6

schedule acknowledged by both parties in writing, and attached to this contract and made a part of it. Changes to this schedule shall also be written and agreed to in writing by both CARRIER and ALLIANCE. This attached schedule shall also contain the conditions of, and changes for, any additional or accessorial services which may be required or performed. CARRIER is on notice that ALLIANCE will not be responsible for any accessorial services performed or charges incurred by CARRIER unless ALLIANCE is notified in advance of the need for such services and authorization is provided to the CARRIER by ALLIANCE with respect to those services. Notwithstanding the provisions of this paragraph, modifications or additions to rates or other provisions of the attached schedule may be agreed to verbally to specific shipping schedules. Confirmation of verbal modifications will be made by a recap faxed or mailed by ALLIANCE to CARRIER. In addition, confirmation and acceptance of verbally agreed to charges to the attached schedule or memorandum can be accomplished by CARRIER's invoice and ALLIANCE's payment thereof. If ALLIANCE pays the freight invoice in a reduced amount, such amount shall constitute the agreed rate, unless CARRIER indicates to ALLIANCE within 30 days of its receipt of payment. CARRIER acknowledges that ALLIANCE is authorized to invoice shippers, receiver, consignor, or consignee for freight charges on behalf of CARRIER and as CARRIER's agent therefore. Payment of freight charges to ALLIANCE shall relieve shipper, receiver, consignor, or consignee of any liability to the CARRIER with respect to such payment and with respect to any underpayment of freight transportation charges. ALLIANCE agrees to pay CARRIER for the transportation services performed by CARRIER under this contract in accordance with the attached schedule. All invoices for work performed by CARRIER must be received no later than 90 days from the date the service was performed. Invoices received after 90 days will not be processed for payment.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7

> CARRIER agrees not to pursue payment in such instances, where CARRIER fails to send its invoice within 90 days. Additionally, there shall be no payment of CARRIER's invoice absent proof of clear and clean delivery of the commodities transported, by submission to ALLIANCE of a signed bill of lading and delivery receipt, which includes ALLIANCE's "load" number.

## CONCLUSIONS OF LAW

The issue of liability for wrongful possession of the trailer was decided in the order entered by this Court on April 9, 2010, ECF No. 21. The issues for trial relate to damages and attorneys' fees.

**Damages for Wrongful Possession of the Trailer**

1. Under Washington law, "[e]vidence sufficiently proves damages when it 'affords a reasonable basis for estimating the loss and does not subject the trier of fact to mere speculation or conjecture.'" *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Development, Inc.*, 160 Wn. App. 728, ___, 253 P.3d 101, 106 (2011) (quoting *Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 704 (2000)) (internal quotations omitted). "A fact finder has discretion to award damages that are within the range of competent evidence in the record." *Id.* (citing *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 850 (1990)).

2. Between November 26, 2009 and April 14, 2010, Alliance hauled 15,824 loads. To estimate the number of loads taken from December 15, 2009

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 8

until April 14, 2010, the Court will calculate the average number of loads per day during the November 26, 2009 to April 14, 2010 period and then multiply that by the number of days between December 15, 2009 and April 14, 2010. There are 139 days between November 26, 2009 and April 14, 2010. 15,824 loads divided by 139 days equals an average of 113.84 loads per day. There are 120 days between December 15, 2009 and April 14, 2010. Multiplying 113.84 times 120 days equals 13661.01 loads. Dividing 13661.01 loads by 1416 trailers equals an average of 9.65 loads per trailer. The trailer either took a load or it did not; therefore, the Court will not count a partial load and will round down to nine whole loads. With an average of $464.86 net fee per load, nine loads would net $4183.74. The BNSF incentive bonus would be $900 total. With an average cost of $1328.00 per load and nine loads, the total cost would be $11,952.00. A four percent rebate on that cost is $478.08. The $4183.74 net fee plus the $900 incentive and $478.08 rebate totals $5,561.82. Therefore, the total damages for lost use of the trailer were $5,561.82. To this total the Court adds $55.57 for Alliance's expense in recovering the trailer. The total is $5,617.39.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 9

**Treble Damages under the Washington Consumer Protection Act**

3. A plaintiff that successfully establishes a claim under the Washington Consumer Protection Act ("WCPA") may be awarded treble damages not to exceed $25,000.00 above plaintiff's principal damages. RCW 19.86.090.

4. The elements of a cause of action under the WCPA are (1) an unfair or deceptive act or practice; (2) occurring in the conduct or trade or commerce; (3) an impact upon the public interest; (4) an injury to the plaintiff's business or property; and (5) causation. *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 739 (1987).

5. To establish the first element of a WCPA claim, "[a] plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785 (1986) (citing *State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298 (1976)). With regard to an act proscribed by statute, such an act will constitute an unfair practice only if so designated by the Washington Legislature. *Id.* at 786-87.

6. Under the second element, the definitions of "trade" and "commerce" are defined broadly to include "'the sale of assets or services, and any

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 10

commerce directly or indirectly affecting the people of the state of Washington.'" *Id.* (quoting RCW 19.86.010(2)).

7. Under the third element, "a claimant may establish that an act or practice is injurious to the public interest because it: . . . (3)(a) injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons." RCW 19.86.093.

8. The fourth element of a cause of action under the WCPA limits recovery to those who suffer an injury to business or property. *Ambach v. French*, 167 Wn.2d 167, 172-73 (2009).

9. For the purposes of the WCPA, causation "means a cause which in a direct sequence unbroken by any superseding cause, produces the injury complained of and without which such injury would not have happened." WPI 15.01; *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d 260, ___, 2011 WL 1434644, at *7-*8 (April 14, 2011).

10. The Court concludes that there is sufficient evidence in the record to establish that Always held itself out as a trucker or motor carrier via its website and in its business dealings with Alliance, but that Always owns no trucks and has never been a trucker or motor carrier. Accordingly, these communications constitute a deceptive act.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 11

11. Always' withholding of the trailer in violation of statute does not constitute a per se unfair practice because the legislature has not designated it as such. The Court sees no basis for holding that Always' retention of the trailer was unfair or deceptive. Additionally, even if the retention constituted an unfair act or practice, Always acted in good faith with an arguably legal claim under RCW 60.60.010 that a lien was appropriate. Accordingly, the only act that satisfies the first element of the WCPA is Always' holding itself out as a motor carrier or trucker because such an act had the capacity to deceive.

12. The Court concludes that Always' holding itself out as a motor carrier or trucker occurred in trade or commerce.

13. Due to the fact that the element of causation is dispositive, the Court declines to address the public impact prong as the statutory definition of public impact was only recently enacted and has not yet been interpreted by the Washington courts. 2009 Wash. Sess. Laws 1886.

14. The Court concludes Alliance suffered injury to its business by not having the use of its trailer.

15. The Court finds that Alliance has failed to establish that Always' holding itself out as a motor carrier caused Alliance to lose the use of its trailer. While the contents of the co-brokerage agreement are not before this

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 12

Court, the existence of such an agreement is.  Despite testimony to the contrary, the co-brokerage agreement, along with testimony from the Fowlers, makes clear that Alliance knew Always engaged in brokerage services and that Alliance wanted to utilize those services.  As a result, this Court does not find that Always' holding itself out as a motor carrier was the determining factor causing Alliance to engage Always' services and, consequently, for Always to detain the trailer.  Accordingly, Alliance has failed to meet its burden to establish causation under the WCPA.

16. Treble damages are not available in this case because Alliance has failed to prove a claim under the WCPA.

**Attorneys' fees**

*Attorneys' fees Under the Washington Consumer Protection Act*

17. Because the Court has concluded that Alliance has failed to establish a cause of action under the WCPA, an award of attorneys' fees is not appropriate under that statute.

*Attorneys' Fees Under the Replevin Statute*

18. RCW 7.64.035(3) reads:

> If at the time of the [show cause] hearing more than twenty days have elapsed since service of the summons and complaint and the defendant does not raise an issue

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 13

of fact prior to or at the hearing that requires a trial on the issue of possession or damages, the judge or court commissioner may also, in addition to entering an order awarding possession, enter a final judgment awarding plaintiff possession of the property or its value if possession cannot be obtained, damages, court costs, reasonable attorneys' fees, and costs of recovery.

19. The plain meaning of this provision is that only where no factual issues that would give rise to the necessity of a trial are raised at or before the show cause hearing is an award of attorneys' fees appropriate.

20. In its closing statement, Alliance admitted, and the Court agrees, that Always raised issues at the show case hearing requiring trial on the issue of damages. ECF No. 70 at 10 ("Always did indeed raise issues at the [show cause] hearing that required a trial on the issue of 'damages'").

21. Because factual issues were raised requiring trial, attorneys' fees are not appropriate under RCW 7.64.035(3).

*Contractual Attorneys' fees*

22. A court must order fees for actions brought to enforce the provisions of a contract where the contract provides for an award of fees. RCW 4.84.330.

23. If an action is brought under tort, contractual attorney fees may still be awarded if the action is "on a contract." *Edmonds v. John L. Scott Real Estate, Inc.*, 87 Wn. App. 834, 855 (1997). "'[A]n action is on a contract

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 14

for purposes of a contractual attorney fees provision if the action arose out of the contract and if the contract is central to the dispute.'" *Id.* (quoting *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 130 (1993)) (alteration in original). However, where resolution of the tort claim does not require reference to the contract, the tort claim is not "on the contract" for purposes of attorneys' fees. *See Boguch v. Landover Corp.*, 153 Wn. App. 595, 619 (2009); *Edmonds*, 87 Wn. App. at 856 ("the terms of the earnest money agreement and the contractual relationship created by the agreement are central to these claims, rendering them claims 'on a contract.'").

24. The only contracts in evidence are the two Motor Carrier Contracts.

25. Paragraph 4 of each Motor Carrier Contract reads:

> All claims for loss and damage of property, cargo, or commodities transported under this contract, and any salvage arising therefrom, shall be processed in accordance with the regulations of the Federal Highway Administration as published as 49 CFR§1005 (sic). The Time limit for filing a claim against a CARRIER shall be nine months from the date of delivery. The time limit for instituting suit on a claim for cargo loss or damage shall be two years and one day from the date the claimant receives and (sic) written disallowance from the CARRIER with whom the claim was filed. If a claimant is successful in recovering for loss, damage or delay in a court of law or through arbitration, it shall be entitled to recover reasonable attorneys' fees in addition to the other

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 15

costs and interest calculated from the date of delivery or scheduled delivery.

26. As admitted by the Plaintiff, the dispute over the wrongful withholding of the trailer can be resolved without reference to this contract provision. ECF No. 70 at 2. Accordingly, the replevin action and action for damages is not on the contract.

27. Additionally, the plain language of this contract provision allows for attorneys' fees where a party to the contract claims loss and damage of property, cargo, or commodities. If a claimant is successful on that claim, then attorneys' fees shall be awarded.

28. The plaintiff's claims are for replevin, damages for lost use of the trailer, and damages under the WCPA.

29. None of the plaintiff's claims are for loss and damage of property, cargo, or commodities. Accordingly, an attorney's fee award is not appropriate under paragraph four of either Motor Carrier Contract.

30. Paragraph 7 of each Motor Carrier Contract reads:

> Carrier shall not assign or re-broker any loads tendered to it by Alliance. If such an event occurs, Carrier agrees that it will remain primarily responsible for any loss, damage or delay. Further, Carrier agrees to reimburse Alliance for any and all costs, fees damages or fines associated with re-brokering the load.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 16

31. As admitted by the plaintiff, the dispute over the wrongful withholding of the trailer can be resolved without reference to this contract provision. ECF No. 70 at 2. Accordingly, the replevin action and action for damages is not on the contract.

32. Accordingly, the Court concludes that attorneys' fees are not appropriate under either provision of the contract.

**Counterclaim**

33. While the Defendant / Counterclaimant did not explicitly identify the legal theory of its counterclaim, the Court will treat the claim as a claim for breach of contract.

34. "[A] plaintiff in a contract action must prove a valid contract between the parties, breach, and resulting damage." *Lehrer v. State, Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 516 (2000) (citing *Northwest Indep. Forest Mfrs. V. Dep't of Labor and Indus.*, 78 Wn. App. 707, 712 (1995)).

35. There are two valid Motor Carrier Contracts in evidence. In the contracts, "ALLIANCE agrees to offer for shipment and [Always] agrees to transport by motor vehicle from and to such points between which

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 17

services may be required, such quantities of commodities as ALLIANCE may require."

36. Rates of compensation under both Motor Carrier Contracts are governed by paragraph three of each contract. Those paragraphs are identical and their content is recorded at Finding of Fact 35

37. The evidence in support of the counterclaim was presented through a statement summarizing remaining balances on invoices that was entered as Defendant's exhibit 209. Mr. Jason Fowler testified that he produced the document and his notations appear on the document showing which invoices had been paid and which had not.

38. The evidence before the Court is insufficient to establish Always' counterclaim for breach of contract. While the Motor Carrier Contracts identify that Always is to transport goods in return for payment, there is insufficient evidence in the record to identify what transportation was to occur with regard to the charges at issue, whether such transport did occur, what the agreed contract price for the service was, and what was paid with regard to each contract. The Court concludes that Always has failed to meet its burden to establish performance and breach under a theory of breach of contract.

39. Accordingly, Always is not entitled to any damages or offset.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 18

Therefore, **IT IS HEREBY ORDERED:**

1. The District Court Executive is directed to enter judgment in favor of Plaintiffs Alliance Shippers, Inc. and against Defendants Always Transport, Inc. The judgment shall include damages for lost use of the improperly withheld trailer and for costs in recovering the trailer in the amount of **$5,617.59**.

2. The parties shall bear their own costs and attorneys' fees.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to enter this Order, to provide copies to counsel, and **close** this file.

**DATED** this 16th of September, 2011.

          *s/ Rosanna Malouf Peterson*
          ROSANNA MALOUF PETERSON
          Chief United States District Court Judge